**VELOCITY EXPRESS and David Kardos, Petitioners**

v.

**PENNSYLVANIA HUMAN RELATIONS COMMISSION, Respondent.**

Commonwealth Court of Pennsylvania.

Argued June 7, 2004.

Decided July 20, 2004.

Deborah Weinstein, Philadelphia, for petitioners.

Diane Blancett–Maddock, Pittsburgh, for respondent.

BEFORE: COLINS, President Judge, and FRIEDMAN, Judge, and MIRARCHI, JR., Senior Judge.

OPINION BY Judge FRIEDMAN.

Velocity Express (Velocity) and David Kardos (Kardos) (together, Appellants) petition for review of the December 9, 2003, order of the Pennsylvania Human Relations Commission (PHRC) denying Appellants' motions to dismiss discrimination charges filed against Appellants. We reverse.

Velocity is in the business of providing local delivery service, and, at all relevant times, Velocity employed Kardos as an operations manager. (Appellants' Brief at Exh. B.) Sometime in 2002, Velocity entered into a written contract with Julie Eileen Sheriff (Sheriff), whereby Sheriff would provide services to Velocity as an independent contractor.[1] (Appellants' Brief at Exh. B; R.R. at 2a, 7a.)

Sheriff alleges that, on December 17, 2002, Kardos sexually harassed her, and she objected. (R.R. at 2a, 7a.) On December 19, 2002, Sheriff's employment with Velocity was terminated. (R.R. at 3a, 7a.) As a result of these events, on March 31, 2003, Sheriff filed discrimination charges with the PHRC against Velocity and Kardos. Sheriff alleges that Velocity violated section 5(a) of the Pennsylvania Human Relations Act[2] (PHRA) and that both Velocity and Kardos violated section 5(d) of the PHRA.[3] (R.R. at 1a–10a.)

In response, Velocity and Kardos each filed a Motion to Dismiss in Lieu of Answer (Motions to Dismiss). Each argued that, because Sheriff is not an employee or an "independent contractor" as defined in the PHRA, Sheriff is not entitled to any protection or remedy under the PHRA.

On November 15, 2003, the PHRC Motions Commissioner issued an interlocutory order denying the Motions to Dismiss. (Appellants' Brief at Exh. A.) Thereafter, Appellants filed an emergency motion to amend the November 15, 2003, order to permit appeal. On December 9, 2003, the PHRC Motions Commissioner granted the emergency motion and issued an amended order to permit interlocutory appeal.

■ Appellants now petition this court for review of the PHRC's order,[4] renewing

---

1. Specifically, Sheriff was to make deliveries through Omnicare. (R.R. at 2a, 7a.)

2. Act of October 27, 1955, *as amended,* 43 P.S. § 955(a). Section 5(a) of the PHRA provides in relevant part:

   It shall be an unlawful discriminatory practice . . .
   (a) For any employer because of the race, color, religious creed, ancestry, age, sex, national origin or non-job related handicap or disability or the use of a guide or support animal because of the blindness, deafness or physical handicap of any individual or independent contractor, to refuse to hire or employ or contract with, or to bar or to discharge from employment such individual or independent contractor, or to otherwise discriminate against such individual or independent contractor with respect to compensation, hire, tenure, terms, conditions or privileges of employment or contract, if the individual or independent contractor is the

best able and most competent to perform the services required.
   43 P.S. § 955(a).

3. This section of the PHRA makes it an unlawful discriminatory practice

   (d) For any person, employer, employment agency or labor organization to discriminate in any manner against any individual because such individual has opposed any practice forbidden by this act, or because such individual has made a charge, testified or assisted, in any manner, in any investigation, proceeding or hearing under this act.
   43 P.S. § 955(d).

4. Our scope of review is limited to determining whether constitutional rights were violated, whether the adjudication is in accordance with the law and whether the necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704.

their argument that Sheriff is not entitled to any protection or remedy under the PHRA because she is not an "independent contractor" under the PHRA. We agree with Appellants.

Section 4(x) of the PHRA sets forth the definition of terms as intended by the statute. That section states:

> The term "independent contractor" *includes* any person who is subject to the provisions governing any of the professions and occupations regulated by State licensing laws enforced by the Bureau of Professional and Occupational Affairs in the Department of State [of the Commonwealth of Pennsylvania], or is included in the Fair Housing Act (Public Law 90–284, 42 U.S.C. § 3601 et seq.).

43 P.S. § 954(x) (emphasis added). In her complaint, Sheriff admits that she is an independent contractor of Velocity, hired to make deliveries. Delivery persons are in a profession or occupation that is neither regulated by the Bureau of Professional and Occupational Affairs nor included in the Fair Housing Act. Nevertheless, the PHRC Motions Commissioner determined that Sheriff was an "independent contractor" covered by the PHRA. In doing so, the PHRC Motions Commissioner interpreted the word "includes" to be one of enlargement to encompass independent contractors "other than" those specified in the PHRA's definition of the term.

■ In interpreting the PHRA, we are mindful that

> a statute must be interpreted according to its terms as enacted. In interpreting a statute, we must at all times seek to ascertain and effectuate the legislative intent underlying its enactment. When construing a statute, we must follow the letter of the statute if its words are unambiguous, but when its words are not explicit, we must ascertain the General Assembly's intent by looking to the Statutory Construction Act.... [5]

*McClellan v. Health Maintenance Organization of Pennsylvania,* 546 Pa. 463, 471, 686 A.2d 801, 805 (1996) (citations omitted). A statute is ambiguous or unclear where its language is subject to two or more reasonable interpretations. *Bethenergy Mines Inc. v. Department of Environmental Protection,* 676 A.2d 711, 715 (Pa.Cmwlth.), *appeal denied,* 546 Pa. 668, 685 A.2d 547 (1996). Because the word "includes" or "including" is "interpreted as a word of enlargement ... as well as a word of limitation," Black's Law Dictionary 763 (6th ed.1990), we conclude that section 4(x) of the PHRA is ambiguous.

■ We are mindful that, when ascertaining the General Assembly's intent with regard to ambiguous statutory language, courts are to give strong deference to an administrative agency's interpretation of a statute that the agency is charged to enforce. *Bethenergy Mines Inc.; see* 1 Pa. C.S. § 1921(c)(8). However,

> [courts] need not give deference to an agency where its construction of a statute frustrates legislative intent. Therefore, although courts often defer to an agency's interpretation of the statutes it administers, where ... the meaning of the statute is a question of law for the court, when convinced that the agency's interpretation is unwise or erroneous, that deference is unwarranted.

*Rosen v. Bureau of Professional and Occupational Affairs, State Architects Licensure Board,* 763 A.2d 962, 968 (Pa.Cmwlth. 2000) (citation omitted), *appeal denied,* 566 Pa. 654, 781 A.2d 150 (2001). Such is the case here.[6]

---

5. Statutory Construction Act of 1972, 1 Pa. C.S. §§ 1501–1991.

6. In concluding otherwise, the PHRC Motions Commissioner relied on *Borough of Economy*

*v. Pennsylvania Human Relations Commission,* 660 A.2d 143 (Pa.Cmwlth.), *appeal denied,* 543 Pa. 696, 670 A.2d 143 (1995). That case involved an independent contractor's

Indeed, interpreting the word "includes" as one of limitation, rather than enlargement, best fulfills the General Assembly's intent in enacting this statute. "It is widely accepted that general expressions, such as 'including, but not limited to,' that precede a specific list of included items should not be construed in their widest context, but apply only to persons or things of the same general kind or class as those specifically mentioned in the list of examples." *McClellan*, 546 Pa. at 472, 686 A.2d at 805. Here, "includes" precedes a specific list, i.e., independent contractors who are in professions or occupations regulated by the Bureau of Professional and Occupational Affairs or those who are included in the Fair Housing Act. Only state-licensed professions and occupations are subject to regulations enforced by the Bureau of Professional and Occupational Affairs.[7] Because delivery service is not a licensed occupation or profession, it is not of the same general kind or class as those professions or occupations covered by the PHRA's definition of independent contractor. Similarly, delivery service providers are not of the same general kind or class as those whose professions or occupations are included in the Fair Housing Act.[8] Thus, we hold that the PHRC Motions Commissioner erred in concluding that independent contractors "other than" those specifically enumerated in section 4(x) are covered by the PHRA.

Our result here also is consistent with the administrative agency's website, which states that the PHRA makes it unlawful to "refuse to contract with *certain* independent contractors" for certain reasons.[9] While we acknowledge that the website is not controlling, the website undoubtedly represents the agency's understanding of the PHRA. By using the word "certain," the website implies, contrary to the conclusion drawn by the PRHC Motions Commissioner, that the PHRA's coverage does *not* extend to independent contractors

---

discrimination action against a municipality that refused to award him a sanitation contract. This court reversed the PHRC's finding of discrimination, concluding that the municipality offered a legitimate, non-discriminatory reason for refusing to award the contract. However, we did not interpret the definition of "independent contractor" in the PHRA, and we never considered the PHRA's coverage of independent contractors. Thus, to the extent that the PHRC Motions Commissioner relied on *Borough of Economy* to support her interpretation of "independent contractor," she erred.

7. The Bureau of Professional and Occupational Affairs regulates the following professions and occupations: auctioneers (49 Pa.Code, ch. 1); barbers (49 Pa.Code, ch. 3); chiropractors (49 Pa.Code, ch. 5); cosmetology (49 Pa.Code, ch. 7); architects (49 Pa.Code, ch. 9); accountancy (49 Pa.Code, ch. 11); funeral directors (49 Pa.Code, ch. 13); landscape architects (49 Pa.Code, ch. 15); medical doctors and practitioners other than medical doctors (49 Pa.Code, chs. 17 & 18): vehicle manufacturers, dealers and salespersons (49 Pa.Code, ch. 19); nursing (49 Pa.Code, ch. 21); optometry (49 Pa.Code, ch. 23); osteopathic medicine (49 Pa.Code, ch. 25); pharmacy (49 Pa. Code, ch. 27); podiatry (49 Pa.Code, ch. 29); veterinary medicine (49 Pa.Code, ch. 31); dentistry (49 Pa.Code, ch. 33); real estate professionals (49 Pa.Code, chs. 35 & 36); engineers, land surveyors and geologists (49 Pa. Code, ch. 37); nursing home administrators (49 Pa.Code, ch. 39); physical therapy (49 Pa.Code, ch. 40); psychology (49 Pa.Code, ch. 41); occupational therapy (49 Pa.Code, ch. 42); speech-language and hearing (49 Pa. Code, ch. 45); and social workers and marriage and family therapists (49 Pa.Code, chs. 47–49).

8. The Fair Housing Act governs those who sell, rent or lease dwellings, 42 U.S.C. § 3604, or provide financing for residential real estate-related transactions, 42 U.S.C. § 3605.

9. Guide for Complainants, *available at* http://sites.state.pa.us/PA—Exec/PHRC/publications/literature/ web—gforc.htm (last visited July 19, 2004) (emphasis added).

"other than" those specifically enumerated in the definition.

Finally, interpreting the word "includes" as a term of limitation is consistent with the use of that word throughout the PHRA. As Appellants point out, under the PHRA, "[t]he term 'employer' *includes* ... any person employing four or more persons ...," and "[t]he term 'age' *includes* any person forty years of age or older...." 43 P.S. §§ 954(b) & (h) (emphasis added). Were we to adopt the interpretation of the PHRC Motions Commissioner and consider "includes" as a term of enlargement, these definitions would erroneously include persons employing less than four persons and persons under the age of forty, respectively. Clearly, the

General Assembly could not have intended such an absurd result. 1 Pa.C.S. § 1922(1) (stating that the General Assembly does not intend a result that is absurd or unreasonable).

Accordingly, for the foregoing reasons, we reverse.

### ORDER

AND NOW, this 20th day of July, 2004, the Pennsylvania Human Relations Commission's interlocutory order, dated November 15, 2003, as amended and certified appealable, December 9, 2003, is hereby reversed.