**MALT BEVERAGES DISTRIBUTORS ASSOCIATION, Petitioner**

v.

**PENNSYLVANIA LIQUOR CONTROL BOARD, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Dec. 13, 2006.

Decided Feb. 23, 2007.

---

Robert B. Hoffman, Harrisburg, for petitioner.

Rodrigo J. Diaz, Deputy Chief Counsel, Harrisburg, for respondent.

BEFORE: COLINS, President Judge, and SMITH–RIBNER, Judge, and PELLEGRINI, Judge, and LEADBETTER, Judge, and COHN JUBELIRER, Judge, and SIMPSON, Judge, and LEAVITT, Judge.

OPINION BY Judge SIMPSON.

This case, which concerns the approval of an application for transfer of a retail dispenser eating place malt beverage license, returns to us after remand in *Malt Beverage Distributors Association v. Pennsylvania Liquor Control Board (Malt Beverage I)*, 881 A.2d 37 (Pa.Cmwlth.2005), *pet. for allowance of appeal denied*, 586

Pa. 775, 895 A.2d 1264 (2006). In this second appeal, we are asked whether an applicant that proposes to sell malt or brewed beverages solely for takeout, and not for consumption on its premises, meets the definition of a "retail dispenser" in Section 102 of the Liquor Code.[1] Concluding it does not, we reverse the Pennsylvania Liquor Control Board's (PLCB) order approving transfer of the license.

Ohio Springs, Inc. (Applicant) is an entity related to Sheetz, Inc. (Sheetz). In January 2004, Applicant applied for a double transfer (a transfer of both ownership and location) of Eating Place Malt Beverage License No. E–2397 from J.D. Beer Store, Inc. located at 2416 Broad Avenue, Altoona, to the premises located at 1900 Valley View Boulevard, Altoona. As part of its application, Applicant sought approval to operate a convenience store/gas station and restaurant/eating place at the same location. A hearing ensued before a PLCB hearing examiner.

Following the hearings, the PLCB found that a new Sheetz "convenience restaurant" opened at the premises about two weeks prior to the hearing. The facility, which is significantly larger than other Sheetz convenience stores, offers a variety of menu items, including pizza, gelati, coffee, salads, carved sandwiches and desserts. Of particular import here, the PLCB found Applicant proposes to sell malt and brewed beverages from its restaurant for takeout only, with postings indicating no such beverages may be consumed on the premises. PLCB Initial Op., Findings of Fact Nos. 115, 116.

Ultimately, the PLCB approved Applicant's license transfer application subject to several conditions.[2] The Malt Beverage Distributors Association (MBDA), a trade association for beer distributors, appealed to this Court. MBDA asserted the PLCB erred in denying its motion to intervene in the PLCB proceedings and in failing to consider whether Applicant met the definition of a "retail dispenser" in Section 102 of the Liquor Code. Ultimately, this Court determined that MBDA had standing and that the PLCB improperly denied it intervenor status. *See Malt Beverage I.* In addition, we remanded the matter to the PLCB to decide whether Applicant satisfied the "retail dispenser" definition.[3]

---

1. Act of April 12, 1951, P.L. 90, *as amended,* 47 P.S. § 1–102.

2. One condition required Applicant to separate the convenience store from the restaurant by a permanent partition. Another condition required it to separate the gas pump area of its operation from the restaurant. Applicant appealed the imposition of the conditions to the Blair County Court of Common Pleas. However, Applicant and the PLCB subsequently entered into a "Conditional Licensing Agreement" in which Applicant essentially agreed to abide by the above-referenced conditions. As a result, Applicant withdrew its appeal to the common pleas court.

3. By way of further procedural history, the PLCB filed a petition for allowance of appeal to the Pennsylvania Supreme Court. In addition, before this Court, MBDA filed a motion to vacate the automatic supersedeas that took effect pursuant to Pa. R.A.P. 1736(b) when the PLCB filed its petition for allowance of appeal. This Court granted MBDA's request to vacate the automatic supersedeas. Ultimately, the Supreme Court denied the PLCB's petition for allowance of appeal as well as Applicant's motion to reinstate the automatic supersedeas.

Thereafter, nearly two months after our decision in *Malt Beverage I*, MBDA filed an application for reconsideration with this Court. In its application, MBDA requested this Court revise its remand order so as to preclude the PLCB from deciding the remanded issue on the grounds it prejudged the issue. This Court dismissed the motion as untimely. *See* Pa. R.A.P. 2542 (reargument application shall be filed within 14 days after entry of order).

On remand, MBDA, Applicant and the PLCB submitted supplemental briefs on the remanded issue. In addition, MBDA filed two separate, but related motions.[4]

Ultimately, the PLCB issued an opinion in which it determined there was no requirement that a "retail dispenser," as defined in Section 102 of the Liquor Code, sell malt or brewed beverages for on-premises consumption to obtain a retail dispenser license. As a result, it determined Applicant could sell malt or brewed beverages solely for off-premises (takeout) consumption. The PLCB set forth several reasons in support of this determination, as follows.

First, the PLCB stated, the requirement that an applicant for an eating place malt beverage license *must* sell malt or brewed beverages for on-premises consumption is not expressed in the Liquor Code. The PLCB stated it never interpreted the Liquor Code in a manner that would require any licensee to avail itself of all the privileges granted by a particular license. As such, Applicant was not required to avail itself of all the rights granted under its retail dispenser license, i.e., selling malt or brewed beverages for *both* on-*and* off-premises consumption.[5]

Further, the PLCB determined that reading the Liquor Code's "retail dispenser" definition in a manner that would *require* an applicant to sell malt beverages for on-premises consumption would lead to enforcement difficulties. More specifically, the PLCB stated "it is unclear whether the daily or weekly or monthly sale of a single glass of beer for on-premises consumption would be sufficient to avoid citation. Certainly, if the General Assembly desired such a reading of 'retail dispenser,' it would have developed some standard against which to measure compliance." PLCB's "Supplemental Opinion Upon Remand," 5/3/06 at 12.

The PLCB also stated that to construe the Liquor Code in a manner that would require on-premises consumption in addition to takeout sales would lead to an absurd result in the context of a statutory scheme designed to limit (rather than promote) the sale of alcohol. *See* Section 104 of the Liquor Code, 47 P.S. § 1–104.

Finally, the PLCB noted, in various "court filings," Applicant stated it would now sell beer for on-premises consump-

---

4. Specifically, MBDA filed a motion to vacate the conditional licensing agreement between Applicant and the PLCB. MBDA asserted, because it was entitled to intervene in the proceedings on Applicant's transfer application before the PLCB, Applicant and the PLCB could not execute the agreement without providing MBDA notice and an opportunity to be heard. The PLCB denied the motion for several reasons.

MBDA also filed a motion entitled "Motion to Recuse Specified Counsel From Advising [the PLCB] on This Matter and Others to Recuse Themselves if They Have Prejudged the Remanded Issue." Through this motion, MBDA requested the PLCB's Chief Counsel refrain from advising the PLCB on the remanded issue. In addition, it requested any PLCB member who prejudged the remanded issue to refrain from deciding it. The PLCB denied MBDA's recusal motion. Because of our resolution of the "retail dispenser" issue, explained more fully below, we need not address the issues raised by MBDA that arise from these related orders.

5. The PLCB also stated, "when faced with cases involving applicants for eating place malt beverage licenses, where it appear[ed] that the applicants were only going to sell malt or brewed beverages for take-out, the Pennsylvania appellate courts have approved the applications without discussing that a problem might exist because these applicants were not going to sell for on-premises consumption." PLCB "Supplemental Opinion Upon Remand" of 5/3/06 at 11 (citing *Myers v. Pa. Liquor Control Bd.*, 499 Pa. 76, 451 A.2d 1000 (1982); *Application of Dorothy Hohl*, 20 Pa.Cmwlth. 490, 342 A.2d 493 (1975)).

tion, if required to do so to obtain the license. Thus, the PLCB stated, there is no remaining impediment to the approval of Applicant's application. As such, the PLCB reaffirmed its grant of the license to Applicant. Again, MBDA appealed to this Court.

At the outset, we note, Section 102 of the Liquor Code defines a "retail dispenser" as follows, with emphasis added:

> **"Retail dispenser"** shall mean *any person licensed to engage in the retail sale of malt or brewed beverages for consumption on the premises* of such licensee, with the privilege of selling malt or brewed beverages in quantities not in excess of one hundred ninety-two fluid ounces in a single sale to one person, to be carried from the premises by the purchaser thereof.

47 P.S. § 1–102.

On appeal, MBDA argues a "retail dispenser" must sell beer for on-premises consumption in connection with its eat-in operations, as a condition of selling for off-premises consumption. It asserts the unusual language used in the statutory definition, which differs strikingly from "either/and/or" language, compels that construction. MBDA also maintains that its interpretation is consistent with the structure of the established beer distribution system, in which beer distributors, like MBDA's members, are granted the market niche of selling to consumers in bulk for home use. It contends failure to enforce the on-premises sales requirement effectively transforms Applicant into a beer distributor, without the accompanying restrictions. MBDA further asserts Applicant's sworn testimony that it would not serve malt beverages for on-premises consumption requires denial of its application.

In response, the PLCB focuses on its holding that an eating place retail dispenser's right to sell beer for on-premises consumption is a privilege and not a duty. It contends MBDA failed to establish that the holding constitutes an error of law. The PLCB asserts its interpretation of its own enabling statute may be reversed only if clearly erroneous and, since its interpretation is not clearly erroneous here, its order should be affirmed. It further contends, while MBDA may disagree with the PLCB's interpretation of the Liquor Code, it cites no case law to support its assertion that a retail dispenser must sell malt beverages for on-premises consumption.

The PLCB further asserts MBDA did not show that any applicant was denied a retail dispenser license because it would not permit on-premises consumption or that any licensee was cited for failure to provide for on-premises consumption.

Additionally, the PLCB maintains, even if an eating place retail dispenser must sell malt beverages for on-premises consumption, because Applicant now indicates it is willing to comply with such a requirement, it would be entitled to the retail dispenser license.

██ The issue as presented by the parties poses a question of statutory construction, to which our review is plenary. *Snizaski v. Workers' Comp. Appeal Bd. (Rox Coal Co.),* 586 Pa. 146, 891 A.2d 1267 (2006). The object of statutory construction is to ascertain and effectuate legislative intent. 1 Pa. C.S. § 1921(a). In pursuing that end, we are mindful a statute's plain language generally provides the best indication of legislative intent. *See Commonwealth v. McClintic,* 589 Pa. 465, 909 A.2d 1241 (2006). Thus, statutory construction begins with examination of the text itself. *Southeastern Pa. Transp. Auth. v. Holmes,* 835 A.2d 851 (Pa. Cmwlth.2003).

In reading the plain language of a statute, "[w]ords and phrases shall be construed according to rules of grammar and according to their common and approved usage." 1 Pa. C.S. § 1903(a). Further, every statute shall be construed, if possible, to give effect to all its provisions so that no provision is "mere surplusage." 1 Pa. C.S. § 1921(a).

▆▆▆ Moreover, although we must "listen attentively to what a statute says[;] [o]ne must also listen attentively to what it does not say." *Kmonk–Sullivan v. State Farm Mut. Auto. Ins. Co.*, 567 Pa. 514, 525, 788 A.2d 955, 962 (2001). We may not insert a word the legislature failed to supply into a statute. *Girgis v. Bd. of Physical Therapy*, 859 A.2d 852 (Pa.Cmwlth. 2004).

▆▆▆ As recently noted by our Supreme Court, "[w]hile courts traditionally accord the interpretation of the agency charged with administration of [an] act some deference, the meaning of a statute is essentially a question of law for the court." *Popowsky v. Pa. Pub. Util. Comm'n*, 589 Pa. 605, 631, 910 A.2d 38, 53 (2006). Generally, "an administrative agency's interpretation of a statute for which it has enforcement responsibility is entitled to substantial deference." *Borough of Pottstown v. Pa. Mun. Retirement Bd.*, 551 Pa. 605, 611, 712 A.2d 741, 744 (1998). However, where an administrative interpretation is inconsistent with the statute itself, or where the statute's meaning is unambiguous, such an interpretation carries little or no weight. *Id.*; *Terminato v. Pa. Nat'l Ins. Co.*, 538 Pa. 60, 645 A.2d 1287 (1994); *Velocity Express v. Pa. Human Relations Comm'n*, 853 A.2d 1182 (Pa.Cmwlth.2004).

▆▆▆ Section 432(a) of the Liquor Code authorizes the PLCB to issue a "retail dispenser" license to, among other entities, an "eating place" that meets "all the requirements of this act and the regulations of the [PLCB]." 47 P.S. § 4–432(a). In turn, Section 102 of the Liquor Code defines a "retail dispenser," in relevant part as: "any person licensed to engage in the retail sale of malt or brewed beverages for consumption on the premises of such licensee, *with the privilege* of selling malt or brewed beverages to be carried from the premises by the purchaser thereof." 47 P.S. § 1–102 (emphasis added).

As noted above, the PLCB interpreted the "retail dispenser" definition in a manner that would *not* require an entity to sell malt or brewed beverages for on-premises consumption. Rather, the PLCB interpreted the definition so as to permit an entity to sell malt or brewed beverages *solely* for off-premises consumption, i.e., takeout. This interpretation, however, is inconsistent with the plain language of the definition.

Pursuant to the plain language of Section 102 of the Liquor Code, the principal or primary purpose of a "retail dispenser" is to engage in the sale of malt or brewed beverages for *on-premises* consumption. Under Section 102, an entity that is licensed for on-premises consumption is given the additional benefit of selling beverages for off-premises consumption. Thus, the language of the statutory definition makes the right to conduct sales for off-premises consumption secondary to the primary purpose of selling malt or brewed beverages for on-premises consumption at the eating place.

The PLCB erred in interpreting the definition in a manner that allows a retail dispenser to sell malt or brewed beverages for *either* on-premises consumption *or* off-premises consumption. This interpretation conflicts with the plain language of the statutory definition because it requires the insertion of "either/or" language where

such language is not expressed. If the General Assembly intended that a "retail dispenser" could sell malt or brewed beverages for *either* on-*or* off-premises consumption, it could have crafted the statutory definition that way.

Further, the PLCB's interpretation departs from common sense. Why would it license a person "to engage in the retail sale of malt or brewed beverages for consumption on the premises" when that person expressly refuses to sell beverages for that purpose?

Because we reach our conclusion based on a "plain language" analysis of the statute, it is not necessary to fully discuss the PLCB's various statutory construction arguments. It is sufficient for current purposes to observe that a potential consequence of the PLCB's interpretation is a significant transformation of the character of outlets for the sale of malt or brewed beverages, to include grocery stores, convenience stores and other commercial establishments with some small area for eating. While such a transformation may be in the public interest, it should be based on legislative intent rather than on a strained administrative reading of statutory language.

Having determined the plain language construction of the "retail dispenser" definition, we now apply that definition to the facts presented. Before the PLCB, Applicant's representative, Steven G. Sheetz, Chairman of Sheetz, Inc., testified Applicant does not intend to provide for on-premises consumption of malt or brewed beverages. Reproduced Record (R.R.) at 176a, 177–78a. More particularly, the following exchanges occurred on direct examination:

Q. In addition to the signs that's going to say for take-out only, if a customer

were to go and sit in the seating area, and open up one can from a six-pack, what will an employee do?

A. Well, they'll give you two options, you can throw that beer out or we'll throw you out. You're going to leave or get rid of the beer.

Q. You don't want to have people consuming alcoholic beverages in the seating area when other people are in there; correct?

A. No. And I think it's important to realize, in the 87 [stores] we have, we don't allow drinking on the premise[s], at any of the stores, and we don't intend to at the restaurant.

R.R. at 176a. Thus, based upon the testimony of Applicant's representative, it is clear Applicant does not intend to allow any on-premises consumption of malt or brewed beverages. Rather, the sale of malt or brewed beverages would be for takeout, that is, off-premises consumption only. As a result, Applicant's proposed operation does not fall within the "retail dispenser" definition is Section 102 of the Liquor Code.

 In addition, although the PLCB's opinion indicates in various "court filings" Applicant now indicates it will sell malt or brewed beverages for on-premises consumption, the PLCB does not identify these filings. More importantly, neither these "filings" nor any other document indicating Applicant will allow on-premises consumption are included in the record before the PLCB. As such, the PLCB erred in relying on this information. *See, e.g., Pa. State Bd. of Funeral Dirs. v. Errichetti*, 440 Pa. 40, 269 A.2d 758 (1970) (board erred in considering matters outside of the record when rendering decision).[6]

Based on the forgoing, we conclude Applicant's proposed operation does not satis-

---

6. Additionally, *Appeal of Pittaulis*, 444 Pa. 243, 282 A.2d 388 (1971), relied on by the

fy the "retail dispenser" definition in Section 102 of the Liquor Code and, as such, the PLCB erred in granting its application for transfer of a retail dispenser eating place malt beverage license. Therefore, we reverse the PLCB's order approving the double transfer of Eating Place Malt Beverage License No. E–2397 to Applicant.

Judge McGINLEY did not participate in the decision in the case.

## ORDER

AND NOW, this 23rd day of February, 2007, the order of the Pennsylvania Liquor Control Board in Case No. 04–9056 approving Ohio Springs, Inc.'s Application for Double Transfer of Eating Place Malt Beverage License No. E–2397 is **REVERSED.**

DISSENTING OPINION BY Judge COHN JUBELIRER.

I must, respectfully, dissent because I disagree with the majority's reading of the plain language of Section 102 of the Liquor Code [1] (Code), which adds non-existent requirements to the statutory language, and does not read Section 102 in context with other provisions of the Code.

First, I believe the majority errs in concluding that the plain language of Section 102 requires that a person **must** sell malt or brewed beverages for on-site consumption. The first clause reads: " 'Retail dispenser' shall mean any person licensed to engage in the retail sale of malt or brewed beverages for consumption on the premises of such licensee." Section 102. The majority's plain language reading notwithstanding, this clause contains no mandatory language such as "shall," "must," or "will." The absence of such language suggests that a more accurate "plain meaning" of this phrase would be to view it as permissive—that the person licensed "may" sell such beverages for on-site consumption (but does not **have** to sell such beverages).

The basic, plain meaning of the word "license" is one of permission, not command: "a revocable **permission** to commit

---

PLCB, does not compel a different result. There, our Supreme Court was asked whether "the [PLCB] can properly reject an otherwise qualified [liquor license] transfer application *for the reason that parol evidence indicates that the applicant's lease does not permit the sale of alcoholic beverages on the demised premises.*" *Id.* at 245, 282 A.2d at 388 (emphasis added). Responding to this issue, the Court stated, "[w]e hold that the [PLCB] exceeded its statutory authority in denying the requested license transfer on this ground." *Id.* The Court further explained "the [PLCB] was designed and established to regulate the sale of liquor throughout the Commonwealth, not to adjudicate collateral issues involving rights and interests in real property." *Id.* at 249, 282 A.2d at 390. Clearly, this is not the issue presented here. A careful reading of *Pittaulis* fails to disclose any discussion of the issue presented here, i.e., the proper interpre-

tation and application of Section 102 of the Liquor Code's "retail dispenser" definition.

Further, neither *Hohl* nor *Myers*, cited in the PLCB's opinion, address the issue presented here. Rather, these cases discuss the Liquor Code's "resort area" exception and the requirement of need or necessity for a resort area license. Further, although *Hohl* mentions the applicant (which sought an eating place retail dispenser license) essentially sought a "takeout license for beer," there is no indication whether the applicant would also provide on-premises consumption or whether such was required. Similarly, *Myers* contains no discussion of the specific issue presented here.

1. Act of April 12, 1951, P.L. 90, *as amended,* 47 P.S. § 1–102.

some act that would otherwise be unlawful," Black's Law Dictionary 931 (7th Ed. 1999); "**permission** to act," Merriam–Webster Online Dictionary.[2] Nothing in this definition of retail dispenser departs from that plain meaning.

The next clause of Section 102 further provides that the licensed party has the "privilege" of selling such beverages for off-site consumption, limiting the quantity that could be purchased for such consumption to no more than one hundred ninety-two fluid ounces "in a single sale to one person, to be carried from the premises by the purchaser thereof." 47 P.S. § 1–102. "Privilege" is defined as "[a] special legal right, exemption, or immunity granted to a person or class of persons" Black's Law Dictionary 1215 (7th Ed. 1999), and "a right or immunity granted as a peculiar benefit, advantage, or favor." Merriam Webster Online Dictionary.[3] Thus, the second clause of Section 102 essentially provides that one with a license to sell for on-site consumption also has a special privilege to sell limited quantities to a single person for off-site consumption.

Reading the two clauses together shows there is nothing in the language or the plain meaning of the terms that **necessarily** requires one exercising the privilege to sell for off-site consumption to also sell for on-site consumption:

> "**Retail dispenser**" shall mean any person licensed to engage in the retail sale of malt or brewed beverages for consumption on the premises of such licensee, with the privilege of selling malt or brewed beverages in quantities not in excess of one hundred ninety-two fluid ounces in a single sale to one person, to be carried from the premises by the purchaser thereof.

47 P.S. § 1–102. The plain meaning of this language is simply, one who **has permission to** sell beverages for on-site consumption (by license), and **may** (by privilege) sell in limited quantities per person for off-site consumption. The majority, however, appears to read a "must sell for on-site consumption" requirement into the language of Section 102 that simply is not there. In doing so, I believe the majority errs in its "plain language" reading of the section.

Additionally, the majority errs by reading this section in isolation. The Code is a comprehensive statutory system with interdependent parts that must be read together to correctly discern our Legislature's intent. These sections are very clear as to what is prohibited and required of retail dispensers. For instance, Section 442 of the Code contains several limitations and requirements a retail dispenser must meet. 47 P.S. § 4–442. For instance, subsection (a) specifically **requires** retail dispensers to buy **all** malt or brewed beverages in bulk in the matter prepared for the market, but then allows the retailer to break that bulk for on **or** off premises consumption.[4] 47 P.S. § 4–442(a). Subsection (b) of Section 442 of the Code limits the areas in which malt or brewed beverages can be sold for on-site consumption to those areas accessible at all times

---

**2.** Merriam–Webster Online (*http://www.m-w.com/209.161.37.11/dictionary/license*).

**3.** Merriam–Webster Online (*http://www.m-w.com/*209.161.37.11/dictionary/privilege).

**4.** Section 442(a) provides that:
No retail dispenser shall purchase or receive any malt or brewed beverages except in original containers as prepared for the market by the manufacturer at the place of manufacture. The retail dispenser **may** thereafter **break the bulk** upon the licensed premises and sell or dispense the same for consumption on **or** off the premises so licensed....

47 P.S. § 4–442(a) (emphasis added).

to the public. 47 P.S. § 4–442(b).[5] Additional restrictions are found in other sections of the Code. For instance, Section 432(f) of the Code provides requirements for those retail dispensers choosing to sell malt or brewed beverages on Sundays. 47 P.S. 4–432(f).[6] What can be drawn from these sections is that the General Assembly has been explicit in setting forth restrictions and clear in explaining them. What also can be drawn from this is that the definition section, alone, is insufficient in defining the requirements and responsibilities of the license. Neither the retail dispenser definition, nor the various sections imposing restrictions on a retail dispenser, in any way indicate that such a retail dispenser **must** sell for on-site consumption.[7] That the statute does not clearly mandate this requirement is consistent with the Pennsylvania Liquor Control Board's (PLCB) analysis.

The effect of the majority's analysis is to read into the PLCB's licensing a requirement that the retail dispenser's license **must** be **used** to the **fullest** extent. The majority does this without citation to statutory authority or precedent. The PLCB notes that it has never required any of its licensees to utilize their individual licenses and permits to the fullest extent, and it provides numerous examples.[8] The PLCB's statement seems consistent with the law—the Malt Beverages Distributors Association have not provided any authority requiring that licenses be used to the fullest extent authorized.

In sum, I respectfully believe the majority misreads the plain language of the statute, addressing this provision in iso-

---

**5.** This Section provides that:

(b) No retail dispenser shall sell any malt or brewed beverages for consumption on the licensed premises except in a room or rooms or place on the licensed premises at all times accessible to the use and accommodation of the general public, but this section shall not be interpreted to prohibit a retail dispenser from selling malt or brewed beverages in a hotel or club house in any room of such hotel or club house occupied by a bona fide registered guest or member entitled to purchase the same or to prohibit a retail dispenser from selling malt or brewed beverages in a bowling alley where the licensed premises and bowling alley are immediately adjacent and under the same roof.
47 P.S. § 4–442(b).

**6.** This Section provides that:

(f) Hotel, eating places, or municipal golf course retail dispenser licensees may sell malt or brewed beverages between the hours of eleven o'clock antemeridian on Sunday and two o'clock antemeridian on Monday upon purchase of a special permit from the board at an annual fee as prescribed in section 614–A of the act of April 9, 1929 (P.L. 177, No. 175), known as "The Administrative Code of 1929," which shall be in addition to any other license fees. This subsection shall not apply to cities of the first class.
47 P.S. § 4–432(f).

**7.** If anything, the language of Section 442(a) arguably seems more supportive of retail dispensers having a choice that rests in their own discretion.

**8.** For instance, retail licensees may sell alcohol from 7:00 a.m. to 2:00 a.m., but they are not required to be open that full span of hours. Sections 406 and 499 of the Liquor Code (Code), 47 P.S. §§ 4–406, 4–499. As another example, a licensee may obtain an amusement permit which allows various forms of entertainment on the licensed premises; however, the licensee need not provide all the types of entertainment authorized. Section 493 of the Code, 47 P.S. § 4–493(10). Additionally, the Code contains provisions for licensees that are not using their licenses at all, allowing them to keep them with the PLCB for safekeeping for up to three years. Section 474.1 of the Code, 47 P.S. § 4–474.1. It stands to reason that if one can have a license without using it at all, and there is a provision for that, one can maintain their license if the person is actually using it, although not to the fullest extent.

lation and not in context with other provisions of the Code, and thus, reads into the language a mandatory requirement that is simply not there.[9]

Accordingly, I would defer to the interpretation of the PLCB, and affirm its determination in this matter.

Judge LEADBETTER and Judge LEAVITT join in this dissenting opinion.

---

**9.** I would find that, even if we give the PLCB no deference in their interpretation, the plain language of the statute clearly supports their interpretation. To the extent there is any question as to that plain language, given our remand to the PLCB presumably to benefit from their expertise, some degree of deference, however slight, should be given that interpretation. *See ARIPPA v. Pennsylvania Public Utility Commission*, 792 A.2d 636, 660 (Pa.Cmwlth.2002) (stating that "[n]ormally, no deference is given when an agency interprets a statute to justify its position in litigation, as in a brief filed in court.... Only when an agency is acting in its expert capacity, either issuing a regulation or acting in an adjudicative capacity, is an agency given deference in its interpretation of a statute.") Nevertheless, as noted, I believe the PLCB's conclusion is supported, even under plenary review by this Court.