# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Geico Advantage Insurance Company    :
as subrogee of its insured, Monil Patel    :
   :
         v.    :    No. 907 C.D. 2020
   :    Argued: November 6, 2023
Modern Auto Crafters,    :
                Appellant    :


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
               HONORABLE STACY WALLACE, Judge
               HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


OPINION BY
PRESIDENT JUDGE COHN JUBELIRER       FILED: January 2, 2024


Modern Auto Crafters (Modern Auto) appeals from an Order of the Court of Common Pleas of Philadelphia County (trial court) finding in favor of GEICO Advantage Insurance Company (GEICO) as subrogee of its insured, Dr. Monil Patel (Dr. Patel). Modern Auto contends it is not subject to Philadelphia Code § 9-605[1], (the "Towing Ordinance")[2] because it is not a tow company, it received consent from Dr. Patel to tow his vehicle to its facility, and, as such, the fee caps in the Towing Ordinance do not apply. Upon review, we affirm.

---

[1] Phila., Pa., The Philadelphia Code § 9-605 (2016).

[2] The Towing Ordinance is appended to Modern Auto's Brief as "Appendix B."

## I.    BACKGROUND

The trial court found the facts as follows:

On September 4, 2017, [Dr.] Patel, an insured of GEICO, caused a motor vehicle accident near 15th and Vine Streets in Philadelphia. . . . Before the ambulance or police arrived, a private tow truck operator repeatedly approached Dr. Patel and sought his consent to tow his car to [] Modern Auto, a body shop and storage facility in Upper Darby, Delaware County. . . . When Dr. Patel declined to give consent at the accident scene, the tow truck operator followed him to the emergency room . . . and there secured Dr. Patel's signature on a one-page agreement (the "Towing Agreement") authorizing the tow from Philadelphia to Delaware County. . . .

The Towing Agreement was drafted by a lawyer on behalf of Modern Auto. . . . Modern Auto distributed the form agreement to approximately 40 tow truck operators in the hope that they would tow disabled vehicles to Modern Auto's Delaware County facility, where the body shop could store the cars and repair them if they were not total losses. . . .

In this case, GEICO, Dr. Patel's insurer, was presented with a bill by Modern Auto for $1,820.10. The bill included charges for storage, "administrative," "late fee," "clean up," tow, "transport," "special equipment," "diagnostics/check[-]in sheet," "preservation," and "hazardous handling." . . . GEICO paid the bill under protest and brought this action to recover the towing, storage and related charges by [] Modern Auto.

(Trial Court Opinion (Trial Ct. Op.) at 1-2 (citations omitted).)

In its complaint, GEICO alleged that Modern Auto violated the Towing Ordinance by engaging in solicitation, charging fees greater than the maximum allotted for storage, charging fees greater than the maximum allotted for repairs, and charging other excessive fees in its invoice. (Complaint (Compl.) ¶¶ 20-23.)[3] Specifically, Modern Auto charged the following fees: storage at $780.00;

---

[3] GEICO asserted other causes of action but did not pursue those at trial.

administrative at $135.00; lot at $95.00; clean up at $75.00; tow at $175.00; transport at $125.00; special equipment at $75.00; diagnostics/check-in sheet at $125.00; preservation at $125.00; hazardous handling at $75.00; and sales tax of 6% at $35.10. (Modern Auto Receipt, Reproduced Record (R.R.) at 639a.) In sum, Modern Auto charged $1,820.10. (*Id*.) This action originally proceeded to arbitration, where Modern Auto prevailed.

GEICO filed an appeal, and the trial court held a bench trial at which the trial court found in favor of GEICO awarding $1,820.10 in compensatory damages and $2,000.00 in exemplary damages. Based upon the terms of the Towing Ordinance, the trial court concluded that Modern Auto is a towing company and accordingly is subject to the Towing Ordinance. (Trial Ct. Op. at 5-6.) The trial court further concluded the Towing Agreement drafted by Modern Auto did not meet the requirements of the Towing Ordinance, and Modern Auto was subject to the fee caps in the Towing Ordinance because Dr. Patel did not consent to the tow. (*Id*. at 6.) Specifically, the trial court reasoned:

> While Modern Auto does not own the tow truck that conveyed Dr. Patel's car from Center City Philadelphia to Upper Darby, Delaware County, the Towing Agreement at issue was drafted for [Modern Auto's] benefit. The Towing Agreement does not contain the name, address or phone number of any towing vendor. . . . The Towing Agreement further provides that the owner of the vehicle is responsible to Modern Auto for the towing fee.
>
> The Towing Ordinance provides that "towing" constitutes "moving. . . a vehicle by another vehicle for which a service charge is made, either directly or indirectly, including any dues or other charges of clubs or associations which provide towing services." . . . An entity that conducts the business of "towing" as defined by the ordinance is a "towing company." . . .
>
> The [c]ourt finds that the placement of the phrase "either directly or indirectly" is ambiguous as it is unclear whether it relates to the moving

3

of the vehicle or to the service charge. . . . One would expect if it was intended to apply to the service charge only, there would be no comma preceding that clause. The phrase is material because, if it modifies "moving . . . a vehicle," Modern Auto would be subject to the Towing Ordinance by indirectly conducting the business of towing through the many towing operators it solicits and provides with form agreements.

It is a well-established principle of statutory construction that when the words of a statute are ambiguous, the intention of the legislative body may be ascertained by reference to the object the law was intended to attain. . . . In this case, the Philadelphia City Council explicitly stated that the purpose of the Towing Ordinance is to protect the public against "fraud, discrimination, deception and similar abuses" in connection with the towing of vehicles disabled by accident or collision. . . .

At best, the Towing Agreement used by Modern Auto is deceptive. Notwithstanding the requirements of the Towing Ordinance, it does not identify the towing company, its license number, or the registration number of the towing vehicle; it contains no fee schedule other than stating the towing fee of "$150.00 - $185.00"; it does not state that the fees are certified by the [Philadelphia Parking Authority (PPA)]; it does not provide for the release of the vehicle to the owner upon payment of the amount due for towing and storage, in accordance with the statutorily required schedule of charges; and it does not limit the scope of the agreement to towing and storage. . . .

Modern Auto clearly seeks to benefit from these deceptive practices and to prey on accident victims when they are most vulnerable.

. . . . The [Towing A]greement is [] unenforceable because it does not comply with the requirements of the Towing Ordinance to identify the towing company or fees. . . .

(Trial Ct. Op. at 5-6 (emphasis omitted).)

Modern Auto filed a motion seeking post-trial relief, which the trial court denied. Thereafter, Modern Auto timely appealed to the Superior Court, which transferred the appeal to this Court as the issues herein deal with provisions of the Towing Ordinance.

4

## II.    DISCUSSION

On appeal to this Court,[4] Modern Auto argues[5] it is not a tow company under the Towing Ordinance. (Modern Auto's Brief (Br.) at 20.) Modern Auto also contends the trial court erred in concluding that Dr. Patel did not consent to the tow. (*Id*. at 13.) Further, because Dr. Patel consented to the tow, the consensual tow provisions of the Towing Ordinance should apply, and the fee caps in the Towing Ordinance should not apply. (*Id*. at 16-18 (citing *Helmrich Transp. Sys. v. City of Philadelphia* (E.D. Pa., No. Civ.A.02-2233, filed Oct. 8, 2004), 2004 WL 2278534).)

### A.    *Whether Modern Auto is a Towing Company*

#### 1.    Parties' Arguments

Modern Auto argues that it does not meet the definition of a "towing company" under the Towing Ordinance because it is only a "repair facility" and it did not tow Dr. Patel's vehicle. (Modern Auto's Br. at 21.) Modern Auto posits that under the Towing Ordinance, "towing" is defined as "**[t]he moving or removing** or the preparation therefor of a vehicle by another vehicle **for which a service charge is made, either directly or indirectly**," *id*. at 20-21 (emphasis in original), and that the phrase "directly or indirectly" only applies to the service charge, not the "moving or removing" of a vehicle. (*Id*. at 23-24.) Modern Auto further contends that the trial court engaged in a "tortured reading of the [Towing] Ordinance to conclude" that the phrase "directly or indirectly" refers to "moving or removing" of a vehicle

---

[4] "Our standard of review of a non-jury trial is to determine whether the findings of the trial court are supported by competent evidence, and whether an error of law was committed." *Laurel Rd. Homeowners Ass'n, Inc. v. Freas*, 191 A.3d 938, 943 n.3 (Pa. Cmwlth. 2018) (citing *Swift v. Dep't of Transp.*, 937 A.2d 1162, 1167 n.5 (Pa. Cmwlth. 2007)).

[5] We reordered and consolidated Modern Auto's arguments for ease of discussion.

and that Modern Auto's business practices meet the definition of a towing company. (*Id.*)

GEICO responds that the trial court did not err because Modern Auto meets the definition of a "towing company" under the Towing Ordinance. (GEICO's Br. at 18.) GEICO argues that because Modern Auto drafted the Towing Agreement, distributed it to multiple towing vendors, directed the towing vendors who utilized the form to tow the vehicle to Modern Auto's facility, and charged for the towing services, Modern Auto is a towing company under the Towing Ordinance. (*Id.* at 18-19.)

### 2. Analysis

The Towing Ordinance provides:

(2) Definitions. In this Section the following definitions apply:

> (a) Towing Company. Any person, partnership, corporation, fiduciary, association or other entity owning, operating or conducting the business of towing.
>
> (b) Towing. The moving or removing or the preparation therefor of a vehicle by another vehicle for which a service charge is made, **either directly or indirectly**, including any dues or other charges of clubs or associations which provide towing services.
>
> (c) Tow Truck or Towing Vehicle. A vehicle that tows, carries or removes a vehicle for a fee, charged either directly or indirectly, including any dues or other charges of clubs or associations which provide towing services. . . .

Philadelphia Code § 9-605(2)(a)-(c) (italics removed) (emphasis added).

The parties set forth a statutory construction issue, "to which our review is plenary." *Malt Beverages Distribs. Ass'n v. Pa. Liquor Control Bd.*, 918 A.2d 171, 175 (Pa. Cmwlth. 2007). "When interpreting a municipal ordinance, this Court is

6

guided by general rules of statutory construction." *Phoebe Servs., Inc. v. City of Allentown*, 262 A.3d 660, 665 (Pa. Cmwlth. 2021), *appeal denied*, 273 A.3d 509 (Pa. 2022). Section 1921 of the Statutory Construction Act of 1972 provides, in pertinent part:

> (a) The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. Every statute shall be construed, if possible, to give effect to all its provisions.
>
> (b) When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit.
>
> (c) When the words of the statute are not explicit, the intention of the General Assembly may be ascertained by considering, among other matters:
>
>> (1) The occasion and necessity for the statute.
>>
>> (2) The circumstances under which it was enacted.
>>
>> (3) The mischief to be remedied.
>>
>> (4) The object to be attained.
>>
>> . . . .

1 Pa.C.S. § 1921. An ordinance "is ambiguous or unclear where its language is subject to two or more reasonable interpretations." *Velocity Express v. Pa. Hum. Rels. Comm'n*, 853 A.2d 1182, 1185 (Pa. Cmwlth. 2004). When interpreting an ordinance, this Court must "listen attentively to what a[n ordinance] says[,]" and "what it does not say." *Malt Beverages*, 918 A.2d at 176 (internal quotations and citation omitted). Further, we must "not insert a word the legislature failed to supply[.]" *Id.*

7

The Towing Ordinance states a "towing company" includes an "entity" that "conduct[s] the business of towing[,]" and that "towing" is the "moving or removing . . . of a vehicle by another vehicle for which a service charge is made, either directly or indirectly . . . ." Philadelphia Code § 9-605(2)(a)-(b). Both parties proffer different interpretations of what "towing" means under the Towing Ordinance, and, specifically, what the phrase "directly or indirectly" modifies. Modern Auto contends that the phrase "directly or indirectly" only applies to the service charge, and GEICO agrees with the trial court that the phrase "directly or indirectly" applies both to the service charge and the phrase "moving or removing" of a vehicle. Both interpretations are reasonable interpretations of the Towing Ordinance. Therefore, the definition of a towing company is ambiguous as to whether the phrase "directly or indirectly" applies to "moving or removing. . . . of a vehicle." *Velocity Express*, 853 A.2d at 1185.

Notably, in the following paragraph, the Towing Ordinance defines a "towing vehicle" as one that "tows, carries or removes a vehicle for a fee, **charged either directly or indirectly** . . . ." Philadelphia Code § 9-605(2)(c) (emphasis added). If the phrase "directly or indirectly" was intended to modify only the service fee in the definition of towing, the Towing Ordinance could have stated in the definition of "towing" that the service fee may be **charged** "either directly or indirectly," as it does for the definition of "towing vehicle." *Id.* However, it does not. We must "not insert [the] word ['charged,' which] the legislature failed to supply[.]" *Malt Beverages*, 918 A.2d at 176. Because the definition of "towing" did not limit the phrase "directly or indirectly" to a "charge[,]" like the definition of a "towing vehicle[,]" the phrase "directly or indirectly" is broader in scope and modifies the phrase "moving or removing" of a vehicle in addition to the "service charge[.]" As

8

such, we agree with the trial court that the definition of a "towing company" is one that encompasses an entity that is directly or indirectly in the business of moving or removing a vehicle by another vehicle for which a service charge is made.

Modern Auto's owner testified that Modern Auto had its attorney draft towing agreements, such as the Towing Agreement here, in the hope that the towing vendor will tow the vehicle to Modern Auto's facility. (R.R. at 688a; Modern Auto's Br. at 8.) Although Modern Auto did not utilize its own tow truck to tow Dr. Patel's vehicle, Modern Auto's pre-drafted Towing Agreement states that the towing vendor will tow the vehicle to Modern Auto's facility, a towing service charge will be paid by Modern Auto, and Modern Auto will seek reimbursement either from the vehicle owner or the vehicle owner's insurance. (R.R. at 323a.) At a minimum, Modern Auto is indirectly "conducting" the business of towing by ordering those that use its pre-drafted Towing Agreement to tow the vehicle back to Modern Auto's facility, paying the towing vendor a fee, and seeking reimbursement for that fee from the vehicle owner/insurer.[6] As such, the trial court did not err in concluding Modern Auto is a towing company subject to the Towing Ordinance.

This interpretation is further supported by the City Council's explicit policy of "protecting the general welfare . . . against fraud, discrimination, deception and similar abuses" of towing. Philadelphia Code § 9-605(1); *see* 1 Pa.C.S. § 1921(c)(1)-(4). If Modern Auto were not subject to the Towing Ordinance, its pre-drafted Towing Agreement would not be subject to the Towing Ordinance's protections including fraud, discrimination, and deception. Because Modern Auto

---

[6] Even if we were to accept Modern Auto's argument that the phrase "directly or indirectly" only applies to the service charge for the tow, Modern Auto would appear to still meet the definition of a towing company because it is the entity that directly charges the owner/insured for the tow.

9

was the entity that drafted the Towing Agreement and ultimately charged Dr. Patel for the tow, among numerous other fees, Modern Auto is subject to the Towing Ordinance.

### B.      Whether Modern Auto Complied with the Towing Ordinance

#### 1.      Parties' Arguments

Modern Auto contends that Dr. Patel consented to the towing of his vehicle because he signed the Towing Agreement. (Modern Auto's Br. at 13.) Modern Auto argues that the Towing Ordinance states if the tow truck operator possesses a towing agreement and the owner of the vehicle signs that agreement, the tow is deemed consensual. (*Id*.) Modern Auto argues that Dr. Patel's verbal assent and subsequent signature on the Towing Agreement indicate that he consented, and Dr. Patel did not revoke his consent at any point. (*Id*. at 13-16.)  Since the tow was consensual, Modern Auto argues the cap on fees is not applicable.[7]

GEICO responds that Dr. Patel did not consent to the tow because his signature on the Towing Agreement was obtained under duress, and the tow was solicited, which is prohibited under the Towing Ordinance. (GEICO's Br. at 11-14.) GEICO also argues that even if Dr. Patel consensually signed the Towing

---

[7] Modern Auto also argues that under *Helmrich Transportation Systems, Inc. v. City of Philadelphia*, (E.D. Pa., No. Civ.A.02-2233, filed Oct. 8, 2004), 2004 WL 2278534, the Towing Ordinance's fee caps should not apply because *Helmrich* holds that fee caps on consensual tows are preempted under federal law, 49 U.S.C. § 14501(c)(1). (Modern Auto's Br. at 18-20.)  While *Helmrich* did hold that fee caps are preempted for consensual tows, it also held that fee caps are not preempted for nonconsensual ones.  2004 WL 2278534, at *5-6.  In addition, *Helmrich* held that fees for non-towing services, **such as storage fees**, are **not preempted**, whether consensual or not.  *Id*. at *5.  As discussed more fully below, because the Towing Agreement did not meet the requirements of the Towing Ordinance, the Towing Agreement is unenforceable and the tow could not be deemed consensual as Dr. Patel would not have been fully apprised as to what he was purportedly consenting.  As such, the fee caps under the Towing Ordinance are not preempted.  In addition, Modern Auto charged non-towing fees, like storage fees, which are also not preempted.

10

Agreement, which GEICO maintains Dr. Patel did not, the Towing Agreement did not comply with the requirements of the Towing Ordinance. (*Id*. at 14.) Specifically, the Towing Agreement did not list a complete schedule of all charges, did not provide a statement that the charges were certified by the Enforcement Agency as defined in the Towing Ordinance, and did not limit the scope of the agreement to towing and storage. (*Id*. at 14, 15, 17.) Because the Towing Agreement did not include essential terms, Dr. Patel could not have assented. (*Id.* at 14.)

### 2. Analysis

The Towing Ordinance states that consent will be deemed to have been obtained if the "tow truck operator possesses [] a consent form or agreement for towing, signed by the owner or operator of the towed vehicle[.]" Philadelphia Code § 9-605(2)(k). **However, before we reach whether Dr. Patel consented to the tow, we must first examine whether the Towing Agreement otherwise complied with Paragraph (5) of the Towing Ordinance governing towing agreements.** This is because, without compliance with the Towing Ordinance, the Towing Agreement itself is unenforceable. *Generette v. Donegal Mut. Ins. Co.*, 957 A.2d 1180, 1190-91 (Pa. 2008) (holding contracts violating public policy are invalid and the Court was "obligated to find contractual language to be contrary to public policy when it violates statutory language").

Paragraph (5) of the Towing Ordinance sets forth the requirements of towing agreements, providing, in relevant part:

(5) Towing Agreements.

(a) . . . . [N]o person shall remove or tow a disabled vehicle from or to a place within the limits of the City of Philadelphia unless a towing agreement, in triplicate, has been signed by the owner

11

of a disabled vehicle or the owner's authorized representative, the operator of the towing vehicle, and a police officer if one is present.

. . . .

(e) The towing agreement shall be on the form prescribed by the Enforcement Agency and shall include the following:

(.1) the name and address of the towing company, the towing company's towing company license number, the registration number of the towing vehicle and **a complete fee schedule of all charges** on the face of the agreement with a statement that these fees are certified by the Enforcement Agency;

(.2) an authorization to remove the disabled vehicle to a bona fide garage or storage repair station located within a reasonable distance from the scene of the tow, in conformity with the schedule of charges filed under § 9-650(3)(b)(.1) and stated in the agreement;

. . . .

(.4) a provision requiring the release of the disabled vehicle to the owner or the owner's authorized representative upon payment of the amount due for towing and storage, if any, in accordance with the schedule of charges filed under § 9-650(3)(b). . . [;]

(.5) a provision stating the location where the disabled vehicle will be stored and enabling the driver of the disabled vehicle, the owner thereof, the owner's authorized representative or the owner's insurance carrier to have free access to examine and inspect the disabled vehicle;

(.6) a provision limiting the scope of the towing agreement to towing and storage;

(.7) spaces as required to fill in all pertinent information on the vehicle in tow, which should include owner's name,

> address, year and make of vehicle and its registration number.
>
> (f) No person shall use any form of towing agreement other than that prescribed by the Enforcement Agency.
>
> (g) The towing agreement and the towing company's bill shall be incorporated into one document.

Philadelphia Code § 9-605(5)(a), (e)(.1)-(.2), (.4)-(.7), (f)-(g) (emphasis added). Under Paragraph (5) of the Towing Ordinance, a towing vendor may not tow a vehicle unless an agreement is signed by the owner of the vehicle to be towed and the operator of the towing vehicle and must have certain details on the face of the agreement as described above. Critically, the Towing Agreement must list "the name and address of the towing company[,]" "**a complete fee schedule** of all charges[,]" and "a provision limiting the scope of the towing agreement to towing and storage." Philadelphia Code § 9-605(5)(e)(.1), (.6). These requirements ensure that the Towing Ordinance's policy of "protecting the general welfare . . . against fraud, discrimination, deception and similar abuses" of towing, Philadelphia Code § 9-605(1), is fulfilled.

The Towing Agreement here shows that the towing vendor was "Sup." without a provided address or phone number. (Towing Agreement, R.R. at 323a.) In response to a question asking what "Sup." stands for, Modern Auto's owner testified that it is "[a]nother situation where it[ is] not clear. It could mean South Philadelphia. It could be Supreme, who knows." (R.R. at 377a.) Modern Auto is the only facility with its full company name, address, and phone number listed on the Towing Agreement. In addition, the only fee listed on the face of the agreement is a $150.00-$185.00 "sum" for transporting the vehicle, which Modern Auto charges to the owner/insured. (Towing Agreement, R.R. at 323a.) Modern Auto charged a total of **$1,820.10 in fees for storage, administrative, lot, clean up, tow,**

13

**transport, special equipment, diagnostics/check-in sheet, preservation, and hazardous handling – only one of which (the $175.00 tow fee) was listed on the Towing Agreement**.  (Modern Auto Receipt, R.R. at 639a.)  At a minimum, the Towing Agreement should have listed the storage fee on its face, clarified that the Agreement was limited to the listed towing and storage fee, and stated that the fees were certified by the Enforcement Agency.  *See* Philadelphia Code § 9-605(5)(e)(.1), (.6).

The only other relevant statement in the Towing Agreement is that "[i]f it is determined that no insurance is applicable, owner agrees to pay the **$150.00-$185.00** [tow] fee directly to the repair facility along with other accrued charges."  (Towing Agreement, R.R. at 323a (emphasis in original).)  A statement that an uninsured owner is responsible to pay "other accrued charges" **without a complete fee schedule**, including storage costs, does not meet the requirements of the Towing Ordinance, and does not protect the general welfare from deception and similar abuses.  Philadelphia Code § 9-605(1), (5)(e)(.1), (.6).  Modern Auto, as a towing company and the creator of the Towing Agreement, must draft the Agreement in accordance with the Towing Ordinance and failed to do so.  Therefore, because the Towing Agreement did not meet the requirements of the Towing Ordinance by specifically setting forth a complete fee schedule that would govern any tow, it was unenforceable.  *Generette*, 957 A.2d at 1191-92.[8]

---

[8] Because a contract that violates the law is void, we need not consider whether Dr. Patel consented to the Towing Agreement.  Without full disclosure of the material terms as required by the Towing Ordinance though, it follows that Dr. Patel could not have purportedly consented to the Towing Agreement at issue here.

## III. CONCLUSION

In summary, the trial court did not err in awarding actual and exemplary damages under Paragraph 17(a)(i)-(ii) because Dr. Patel's vehicle was "towed other than in circumstances authorized by [the Towing Ordinance.]" Philadelphia Ordinance Code § 9-605(17)(a)(i)-(ii). Modern Auto meets the definition of a "towing company" under the Towing Ordinance and is subject to the provisions thereof. Further, because Modern Auto's Towing Agreement failed to meet the specifications outlined in the Towing Ordinance, it is not enforceable. Accordingly, we affirm.

_____
**RENÉE COHN JUBELIRER,** President Judge

Judge Fizzano Cannon did not participate in the decision in this case.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Geico Advantage Insurance Company :
as subrogee of its insured, Monil Patel :
                               :
                               :
             v.                 :    No.  907 C.D. 2020
                               :
Modern Auto Crafters,             :
                 Appellant    :

## O R D E R

**NOW**, January 2, 2024, the Order of the Court of Common Pleas of Philadelphia County, entered in the above-captioned matter, is **AFFIRMED**.

_____
**RENÉE COHN JUBELIRER,** President Judge