**MALT BEVERAGES DISTRIBUTORS ASSOCIATION, Petitioner**

v.

**PENNSYLVANIA LIQUOR CONTROL BOARD, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Dec. 10, 2008.

Decided March 2, 2009.

Robert B. Hoffman, Harrisburg, for petitioner.

Rodrigo J. Diaz, Executive Deputy Chief Counsel, Harrisburg, for respondent.

Robert J. O'Hara, III and Stanley J. Wolowski, Pittsburgh, for intervenor, Wegmans Food Markets, Inc.

BEFORE: LEADBETTER, President Judge, SMITH–RIBNER, Judge, PELLEGRINI, Judge, FRIEDMAN, Judge,[1] COHN JUBELIRER, Judge, SIMPSON, Judge, and LEAVITT, Judge.

OPINION BY Judge SIMPSON.

In this appeal from an order of the Pennsylvania Liquor Control Board (PLCB), Malt Beverage Distributors Association (MBDA) asks whether the PLCB erred in granting Wegmans Food Markets, Inc.'s (Wegmans) application for a restaurant liquor license at its store in Easton, Pennsylvania. Essentially, MBDA argues the real seller of beer here is Wegmans' *supermarket,* and the notion that Wegmans' Market Café restaurant is actually the seller is merely a legal fiction. Wegmans asserts the PLCB erred in granting MBDA standing to intervene in the proceedings. Upon review, we affirm.

## I. Background

In February 2007, Wegmans filed an application for the intermunicipal double transfer of Restaurant Liquor License No. R–2455 from Michael J. Relvas, 601 South 23rd Street, Wilson Borough, Easton, to itself, for the premises located at 3791 Easton Nazareth Highway, Easton Pennsylvania. MBDA, Tanczos Beverages, Inc. (Tanczos), and Jim–Bob, Inc., d/a Budget Beverage (Jim–Bob), filed a joint motion to intervene in the licensure proceedings.

1. The decision in this case was reached before January 1, 2009, when Judge Friedman as-  sumed the status of senior judge.

Wegmans filed an answer, requesting the PLCB deny the motion to intervene.

The PLCB's Bureau of Licensing (Bureau) informed Wegmans it would conduct a hearing to take evidence regarding several objections by the Bureau, including:

1) The [PLCB] shall take evidence to determine if it should permit an interior connection to the unlicensed grocery store in accordance with Section 3.52(b) of the [PLCB's] Regulations.

2) The [PLCB] shall take evidence to determine whether it should permit [Wegmans] to operate another business on the licensed premises (the storage and preparation of food items for the unlicensed grocery store as well as grocery item sales), in accordance with Section 3.52(c) of the [PLCB's] Regulations.

3) The [PLCB] shall take evidence to determine if [Wegmans] will allow minors to frequent its licensed premises, in violation of Section 493(14) of the Liquor Code.[2]

4) The [PLCB] shall take evidence and hear argument on the issue of whether the Commonwealth Court decision in *Malt Beverage Distributors Association v. Pennsylvania Liquor Control Board,* [918 A.2d 171 (Pa.Cmwlth.), *appeal granted,* 593 Pa. 413, 931 A.2d 626 (2007)], and/or Section 3.52–3.54 of its Regulations, precludes an interior connection between a supermarket and a restaurant, notwithstanding the lack of reference to such a limitation in the Regulation and its predecessors, Regulation 103 and Regulation R–37–27 and further notwithstanding the [PLCB's] historical policy of approving such connections when appropriate. [*See*] *Freedman v. Pennsylvania Liquor Control Board,* 20 Pa. D & C[.]2d 353 (1954).

[*See also* ] *Tacony Civic Association v. Pennsylvania Liquor Control Board,* 668 A.2d 584 (Pa.Cmwlth.1995).

5) The [PLCB] shall take evidence and hear argument on the issue of whether the Commonwealth Court decision in *Malt Beverage Distributors Association v. Pennsylvania Liquor Control Board,* [918 A.2d 171 (Pa.Cmwlth.), *appeal granted,* 593 Pa. 413, 931 A.2d 626 (2007) ], and/or Section 3.52–3.54 of its Regulations, imposes a limitation on the size of the unlicensed business, when compared to the licensed business, notwithstanding the lack of reference to such a limitation in the Regulation and its predecessors, Regulation 103 and Regulation [R–]37–27 and further notwithstanding the [PLCB's] historical interpretation of the Regulations to allow an interior connection to other businesses such as department stores (Wanamaker's and Boscov's).

6) The [PLCB] shall take evidence to determine if [MBDA], [Tanczos] and [Jim–Bob], would be directly aggrieved by the granting of this application, which would qualify them as intervenors in this matter. *See In re Application of Family Style Restaurant, Inc.,* 503 Pa. 109, 468 A.2d 1088 (1983); *Malt Beverage Distribs. Ass'n v. Pa. Liquor Control Bd.,* 881 A.2d 37 (Pa.Cmwlth.2005).

7) The [PLCB] shall take evidence to determine that the approval of this application will not adversely affect the health, welfare, peace and morals of the neighborhood within a radius of 500 feet of the proposed licensed premises.

PLCB Op., Finding of Fact (F.F.) No. 2. A hearing ensued before a PLCB hearing examiner.

After hearing,[3] the PLCB hearing examiner issued a recommended opinion in

---

**2.** Act of April 12, 1951, P.L. 90, *as amended,* 47 P.S. § 4–493(14).

**3.** Wegmans also filed license transfer applications for its Bethlehem, Wilkes–Barre, Dick-

which he opined the PLCB should approve Wegmans' license transfer application. In addition, the hearing examiner opined MBDA would not be directly aggrieved if Wegmans obtained the requested license and, therefore, it should not be granted intervenor status.

The PLCB subsequently issued an order approving Wegmans' license application. The order indicated if an appeal was filed the PLCB would issue an opinion in support of its order. Wegmans filed three motions asking the PLCB to clarify and/or reconsider its order. Each motion focused on the standing of MBDA, Tanczos and Jim–Bob to intervene in the proceedings. Ultimately, the PLCB clarified its prior order, holding MBDA had standing and expressly granting it intervenor status. The PLCB declined to grant Tanczos or Jim–Bob intervenor status because no one appeared at the hearing on their behalf and, therefore, they failed to show how they would be directly aggrieved. MBDA filed a petition for review to this Court, and the PLCB issued an opinion in support of its order.[4]

## II.  PLCB's Opinion

### A.  PLCB's Findings

The PLCB's opinion in support of its order approving Wegmans' license application contained 471 findings, which are summarized below.

son City/Scranton, Williamsport and State College locations. Within a six-week period, a PLCB hearing examiner conducted individual hearings for each of the various locations. At each hearing the parties presented testimony that was generally applicable to the issues surrounding Wegmans' applications. The parties proceeded before the PLCB hearing examiner by creating a single record applicable to all stores or any single store. However, the PLCB issued separate opinions for each individual location due to some site specific issues as well as specific geographic intervenors.

In November 2006, the Lower Nazareth Township Board of Supervisors adopted a resolution approving the transfer of Restaurant Liquor License No. R–2455 in the Township.

Gabriel J. Santilli, a PLCB licensing analyst who investigated Wegmans' license transfer application, testified concerning his investigation of the application and the proposed interior connections. Santilli explained the neighborhood within 500 feet of the proposed licensed premises is entirely commercial, and the proposed licensed premises would not be within 200 feet of any other licensees or within 300 feet of any restrictive institutions. He testified there would be six interior connections· between the proposed licensed premises and the unlicensed grocery store, which would be separated by four-foot high wall partitions. Santilli explained customers would also be able to enter the proposed licensed premises directly from the parking lot, without passing through the grocery store. Santilli also testified Wegmans would have a separate cash register for the sale of beer.

The Bureau also presented evidence that the PLCB previously issued licenses to Boscov's, John Wanamaker's and Wawa, Inc., all of which had restaurants with interior connections to retail stores.

4. Additionally, MBDA and various distributors filed petitions for review from PLCB orders approving Wegmans' license transfer applications for its stores in Williamsport (513 C.D.2008), Wilkes–Barre (515 C.D.2008), State College (516 C.D.2008), Bethlehem (517 C.D.2008) and Dickson City/Scranton (518 C.D.2008). Those matters were argued seriately with this case. Like the PLCB, we issue separate opinions for each transfer application.

MBDA presented the testimony of Mary Lou Hogan, MBDA's chief counsel and executive secretary. Hogan explained MBDA is a trade association for malt beverage distributors in Pennsylvania, which is comprised of 430 members. Hogan testified MBDA's basic concern with regard to Wegmans' application is the economic impact on distributors if a supermarket the size of Wegmans is permitted to sell beer. She testified MBDA believes the difference between Wegmans and a typical restaurant licensee is that customers who patronize Wegmans are there to buy grocery items, which beer distributors cannot sell. She further explained that Wegmans' customers would be able to purchase beer in direct competition with distributors. Hogan testified MBDA is concerned that, because Wegmans sells a multitude of grocery items, the sale of beer at Wegmans could attract customers who might not otherwise be contemplating a beer purchase. Hogan further testified Wegmans would attract customers for take-out beer sales and distributors could not compete with that because distributors are required to sell beer by the case, while restaurants can sell beer in six-packs. Hogan also testified that if Wegmans obtained a restaurant liquor license many of its sales could come at the expense of distributors and, as a result, a number of area distributors would go out of business. Hogan explained the sale of beer by Wegmans would have a direct and indirect negative impact on all distributors in the state. Specifically, she explained, the direct impact would be for distributors in the immediate area of Wegmans, while the indirect impact would be as a result of other supermarkets across the state obtaining licenses to sell beer.

Although MBDA's petition to intervene was filed jointly by Tanczos and Jim–Bob, which are both beer distributors in the Easton area, no one appeared from or on behalf of either entity to testify how they would be directly aggrieved by the grant of Wegmans' application.

However, Charles Greenstreet, co-owner of Meadowbrook Beverage Company t/a Stockertown Beverage Center, a beer distributor located within about five minutes driving distance of Wegmans' Easton location and a member of MBDA, testified in support of MBDA's petition to intervene. Greenstreet testified his business would be negatively impacted if Wegmans received approval to sell beer. Greenstreet based his opinion, in part, on the fact that beer purchasing is a matter of convenience and, as a result, many customers would likely purchase beer from Wegmans at the same time they purchase groceries.

Wegmans presented the testimony of David DeMascole, its Regional Beverage Director for Pennsylvania and the general manager of its distribution center in Schuylkill County. As Regional Beverage Manager, DeMascole is responsible for coordinating the opening and introduction of beer sales in the restaurants in Wegmans' stores. DeMascole explained Wegmans began opening restaurants in the 1990s as a way to distinguish itself from other supermarkets and grow its business in the restaurant field. DeMascole explained, compared to large supermarket chains, Wegmans is a small regional chain and it needed to develop a niche, which it did by opening its restaurants over the past 15 years. DeMascole testified the food offered at Wegmans' restaurants is comparable to that served at restaurants such as T.G.I. Friday's or Applebee's, but that Wegmans is at a competitive disadvantage with such restaurants because of its inability to serve a glass of beer with a meal. DeMascole explained that Wegmans would sell beer for both on-site consumption and takeout, but it has not reached a conclusion as to the percentage of on-site consumption versus takeout

sales. DeMascole further testified that on-premises consumption of beer would be limited to the licensed areas. DeMascole also testified, unlike its stores in other states, Wegmans does not anticipate impulse purchases of beer in its Pennsylvania stores because the beer would only be located in the restaurant area of the store, which is not an area that all customers frequent.

Wegmans also presented the testimony of Deborah McCue, store manager of its Easton location, who is familiar with the store layout and all operational and financial aspects. McCue testified Wegmans' Easton location, which opened in September 2002, operates a restaurant under the same roof as the supermarket and the restaurant opened at the same time as the supermarket. McCue testified that customers can access the proposed licensed restaurant area from an entrance that leads directly to the parking lot. McCue explained the proposed licensed area is approximately 9,200 square feet and the total seating for the restaurant is 206 customers. McCue testified that, if licensed, Wegmans would sell beer in individual cans and bottles as well as six-packs from lockable beer coolers in one portion of the licensed premises. She explained that customers may only purchase beer at a designated cash register. McCue testified the store is open 24 hours a day, seven days a week and the restaurant is open from 9:00 a.m. to 9:00 p.m., occasionally staying open until 10:00 p.m. She explained Wegmans would sell beer during the hours the restaurant is open, except on Sundays, when beer cannot be sold before 11:00 a.m. McCue testified that customers 21 years of age and older would be able to choose beer from the coolers, pay for it at the designated register, put it in a cart and continue to shop for groceries in the store. She also explained that customers could purchase beer for takeout or could consume beer on the proposed licensed premises if they also purchased food purchased from the Market Café area.

Wegmans also presented the testimony of Thomas J. Shepstone, an urban planner, who performed a market study at Wegmans' request. Shepstone testified Wegmans is pursuing its business model of niche marketing, particularly with regard to its sale of prepared foods. Shepstone testified he did not believe there would be a negative impact on any beer distributors if Wegmans began selling beer in its restaurants. He explained that, as compared to other supermarkets, Wegmans is more aptly characterized as a "destination," i.e., a store that customers would travel further to reach than a typical grocery store. Shepstone opined other businesses, including beer distributors, near Wegmans actually benefit from their location because Wegmans draws customers to the area that would not otherwise be there. Shepstone also opined it is unlikely that Wegmans' sale of beer would generate many new customers for Wegmans; rather, the sale of beer would primarily serve existing customers. At Wegmans' request, Shepstone also examined the location of Wegmans' Easton store in relation to several nearby beer distributors, including Tanczos, Jim–Bob and Stockertown Beverage Center. Shepstone noted that Wegmans' Easton location is surrounded by distributors. He opined that Wegmans' Easton location has a positive effect on the distributors because Wegmans draws customers to the area for all businesses. Shepstone opined that if Wegmans obtained a restaurant liquor license for its Easton location, it would not negatively impact other licensees, particularly distributors, because there is plenty of business for all of the licensees. In fact, Shepstone opined Wegmans' Easton location would have a positive impact on nearby distributors. Shepstone

further opined that Wegmans' sale of beer would draw few new customers because it would merely be adding a convenience for existing customers.

Wegmans also presented the testimony of John Rowland Dunham, an economist, who performed an analysis of whether beer sales by Wegmans would have a significant negative impact on beer distributors. Dunham opined neither MBDA nor any individual distributors would be harmed as a result of Wegmans' beer sales and, in his opinion, they may actually benefit. Dunham testified, in his years of experience studying retail establishments, he found that similar retail establishments often locate together to enhance all of their businesses. Dunham testified Wegmans is beneficial to nearby businesses based in part on the economic benefit of "clustering," which occurs when retail establishments are located very close to one another. Dunham explained the benefit to other distributors of Wegmans being located near them is Wegmans attracts a large number of customers because it is more than a grocery store, but rather it is a "destination retailer." Dunham further testified that sales of cases of beer and six-packs are two different businesses. He opined Wegmans would not adversely impact distributors, in part, because Wegmans would be limited to selling two six-packs per transaction while distributors sell in much greater quantity. Dunham also agreed with Shepstone's testimony that Wegmans would attract few new customers through the sale of beer.[5] Additionally, based on his analysis of the beer market in Northampton County, the location of retail licensees and grocery stores in the county and his review of PLCB licensing data, Dunham opined distributors

in Northampton County would not suffer economic harm if Wegmans obtained a restaurant liquor license.

In order to rebut the testimony of Wegmans' experts that more competition helps all businesses, MBDA presented the testimony of Matthew Weinstein, an attorney specializing primarily in retail shopping center development, leasing and financing. He testified that contrary to the testimony of Wegmans' experts, "real world" commercial tenants do not seek to "cluster" or "co-locate" around similar businesses. To that end, Weinstein testified regarding various use restrictions and restrictive covenants commonly placed in commercial leases that are used to deter direct competition between retail tenants. In addition, MBDA presented the testimony of Lee Goldstein, the owner of several strip malls and the operator of a real estate management company. Goldstein generally agreed with Weinstein's testimony regarding commercial leasing.

### B. PLCB's Analysis

Based on its findings, the PLCB issued an analysis concerning the objections to Wegmans' license transfer application.

As to the issue of standing, the PLCB determined MBDA would be directly aggrieved by the approval of Wegman's license transfer application, and, therefore, it was entitled to intervenor status. The PLCB relied on this Court's decision in *Malt Beverage Distributors Ass'n v. Pennsylvania Liquor Control Board (Sheetz I )*, 881 A.2d 37 (Pa.Cmwlth.2005), *appeal denied,* 586 Pa. 775, 895 A.2d 1264 (2006), where we determined MBDA had standing to intervene in proceedings in which the operator of a Sheetz convenience store sought an "eating place" malt beverage

---

**5.** Wegmans also presented the testimony of its Regional Loss Prevention Manager, Carl Phillips, who testified concerning the safeguards and policies Wegmans would implement in connection with its proposed sale of beer.

license in order to sell beer for takeout in connection with its "new Sheetz convenience restaurant." *Id.* at 38.

The PLCB also considered whether it should approve an interior connection between the licensed premises and the unlicensed grocery store. It noted that Section 3.52(b) of its regulations provides, "Licensed premises may not have an inside passage or communication to or with any business conducted by the licensee or other persons *except as approved by the [PLCB].*" 40 Pa.Code § 3.52(b) (emphasis added). The PLCB noted it previously approved interior connections similar to the one at issue here at stores such as Boscov's, John Wanamaker's, and Wawa. The PLCB also determined that, based on evidence regarding the layout of Wegman's Market Café in relation to the unlicensed grocery store area, there was no reason not to approve the proposed interior connection. It noted the proposed licensed area would be clearly separated from the unlicensed portions of the premises by four-foot high barriers. The PLCB further determined Wegmans' proposal fully complied with the requirements set forth in Sections 3.52–3.54 of the PLCB's regulations, 40 Pa.Code §§ 3.52–3.54. Also, it determined this Court's decision in *Malt Beverage Distributors Ass'n v. Pennsylvania Liquor Control Board (Sheetz II)*, 918 A.2d 171 (Pa.Cmwlth.), *appeal granted*, 593 Pa. 414, 931 A.2d 626 (2007), did not preclude the proposed interior connection between the licensed premises and the unlicensed grocery store. Finally, the PLCB determined that ap-

proval of Wegmans' application would not adversely affect the health, welfare, peace and morals of the neighborhood within a radius of 500 feet of the proposed licensed premises.

Based on these findings and determinations, the PLCB approved the application for double transfer of Restaurant Liquor License No. R–2455.[6] This matter is now before the Court for disposition.[7]

### III. Standing

■ As an initial matter, Wegmans argues the PLCB erred in granting MBDA standing as an intervenor in the licensure proceedings before the PLCB.

In the companion case of *Malt Beverage Distributors Ass'n & Tanczos Beverages, Inc. v. Pennsylvania Liquor Control Board (Bethlehem Wegmans)*, 965 A.2d 1254 (Pa.Cmwlth. 2009), we rejected Wegmans' argument that the PLCB erred in granting MBDA and Tanczos Beverages, Inc. (an MBDA member distributor) standing to intervene in these licensure proceedings. In short, we held the PLCB properly determined this Court's prior decision in *Sheetz I* controlled this issue and, therefore, the PLCB properly determined MBDA and Tanczos had standing to intervene in the licensure proceedings for Wegmans' Bethlehem store. Consistent with our holding in *Bethlehem Wegmans*, we discern no error in the PLCB's decision to grant MBDA standing to intervene in the licensure proceedings in this matter.

### IV. Merits

■ As to the merits, MBDA advances several arguments in support of its general

6. Shortly after MBDA filed its petition for review with this Court, MBDA filed a motion asking this Court to stay beer sales by Wegmans. Ultimately, a single judge of this Court quashed MBDA's motion.

7. Our review of a decision of the PLCB as an administrative agency is limited to determin-

ing whether there was a constitutional violation or an error of law, whether the practices and procedures of the PLCB were followed and whether necessary findings of fact were supported by substantial evidence in the record. *Sheetz I.*

contention that the PLCB erred in approving Wegmans' application for the double transfer of Restaurant Liquor License No. R–2455.

In *Bethlehem Wegmans*, we rejected MBDA's assertions that the PLCB erred in granting Wegmans' application for the transfer of a restaurant liquor license to its Bethlehem location. First, we pointed out that MBDA did not dispute that Wegmans' Market Café satisfied the statutory "restaurant" definition set forth in Section 102 of the Liquor Code, 47 P.S. § 1–102. Next, we stated the PLCB did not err in its interpretation of the PLCB regulations governing interior connections between licensed premises and other businesses. *See* 40 Pa.Code §§ 3.52–3.54. In addition, we determined the PLCB properly applied these regulations to the facts presented concerning Wegmans' proposed operation of its licensed restaurant and the unlicensed grocery store. Finally, we determined the authority cited by MBDA, *Sheetz II* and *Pennsylvania Liquor Control Board v. Ripley,* 107 Pa.Cmwlth. 425, 529 A.2d 39 (1987), did not compel the conclusion that the PLCB erred in granting Wegmans' application for a restaurant liquor license for its Bethlehem location with the proposed interior connection between the licensed restaurant and the unlicensed grocery store. Consequently, we held the PLCB properly approved Wegmans' license transfer application.

In accord with our decision in *Bethlehem Wegmans,* which is controlling here, we affirm the order of the PLCB granting Wegmans' request for the inter-municipal double transfer of Restaurant Liquor License R–2455 for its Easton location.

Judge McGINLEY did not participate in the decision in this case.

*ORDER*

AND NOW, this 2nd day of March, 2009, the order of the Pennsylvania Liquor Control Board is **AFFIRMED.**