IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: Appeal of the Lamar Companies  :
From the Decision of the Zoning  :
Hearing Board of East Whiteland  :  No. 1308 C.D. 2020
Township Dated October 29, 2019  :  Argued: November 18, 2021
  :
Appeal of: The Lamar Companies  :

BEFORE:  HONORABLE MICHAEL H. WOJCIK, Judge
  HONORABLE CHRISTINE FIZZANO CANNON, Judge
  HONORABLE ELLEN CEISLER, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CEISLER  FILED: March 1, 2022

Appellant The Lamar Companies (Lamar) appeals from the Court of Common Pleas of Chester County's (Common Pleas) December 11, 2020 order, through which Common Pleas affirmed the Zoning Hearing Board of East Whiteland Township's (Board) October 28, 2019 decision to deny Lamar's request for zoning relief, in the form of either a special exception or a variance, that was needed for Lamar to erect an outdoor sign on a property in the Township. Lamar no longer challenges the Board's refusal to grant variance relief, but now argues to our Court that the Board abused its discretion and committed errors of law when it denied Lamar's request for a special exception and, in addition, violated Lamar's due process rights. After review, we affirm Common Pleas' order.

## I. Background

On March 6, 2019, Lamar filed an application with the Board, through which it sought variance relief that would enable it to build a 300-foot-square, 25-foot-tall, double-sided outdoor sign on a triangular, 2.4-acre, Office Business Park-zoned (O/BP) property located at 49 East Lancaster Avenue in the Township (Property).

Reproduced Record (R.R.) at 34a-41a. Lamar subsequently amended its application on May 9, 2019,[1] thereby seeking additional variance relief and, in the alternative, special exceptions pursuant to Sections 200-82C and 200-89 of the Township's Zoning Ordinance.[2] *Id.* at 43a-44a. These special exception-related provisions read as follows:

> Special Signs. In all districts, signs which do not meet the restrictions of [Zoning Ordinance Section] 200-82A [governing signs in districts zoned Office/Business Park, Office/Business Park Services, and Professional Office] or

---

[1] Lamar described its sought-after relief in its amended application as follows:

> A variance from section 200-85.E "Off-Premises Signs" to permit an off-premises sign to be located on a lot that has an existing principal use, an office building;
>
> or in the alternative,
>
> A special exception pursuant to section 200-82 C "signs in nonresidential districts; exceptions" to permit an off-premises sign in the O/BP District on a lot that has an existing principal use, an office building;
>
> or in the alternative,
>
> A special exception pursuant to section 200-89 "Special signs" to permit an off-premises sign in the O/BP District on a lot that has an existing principal use, an office building;
>
> or in the alternative,
>
> A variance from sections 200-31 and 36.C "Development standards for Mixed Use Districts" to permit the subdivision of the property into 2 lots, one of which subdivided lots would be less than the minimum tract area requirement of 80,000 square feet.

R.R. at 43a-44a.

[2] East Whiteland Township Zoning Ordinance, Chester County, Pa., *as amended* (2007), available at https://ecode360.com/6757091 (last visited Feb. 28, 2022). On November 13, 2019, the Township's Board of Supervisors enacted Ordinance No. 321, which fully repealed both Zoning Ordinance Section 200-82C and Section 200-89. The version of the Zoning Ordinance that was in effect at the time of Lamar's amended application is contained in the reproduced record. *See* R.R. at 283a-478a.

B [governing signs in districts zoned Village Mixed-Use, Frontage Commercial, Regionally-Oriented Commercial, and Industrial] may be permitted in unusual circumstances if approved as a special exception by the . . . Board.

Zoning Ordinance § 200-82C.

In all districts, signs which do not meet the restrictions set forth in this Article XII (Signs) may be permitted in unusual circumstances by special exception, provided, however, that the . . . Board, in considering any such request for a special exception for special signage, shall consider the unusual circumstances upon which the special exception application is based, and the review and recommendation by the Township Planning Commission with respect to the application.

*Id.* § 200-89.

The Township then commenced with its consideration of Lamar's amended application. The Board held two public hearings, the first on July 22, 2019, and the second on September 23, 2019. In addition, Deb Abel, the Chair of the Township Planning Commission, sent a letter to the Board on September 18, 2019, in which she stated that "the Planning Commission did not believe that [Lamar] had identified any unusual circumstances that would justify the granting of [a] special exception pursuant to [Zoning Ordinance Section] 200-89 (Special Signs) and therefore voted to recommend denial of the requested relief." R.R. at 56a. Thereafter, the Board denied Lamar's amended application via written decision on October 28, 2019. *Id.* at 270a-82a.

Lamar appealed this decision to Common Pleas on November 25, 2019. Common Pleas took no additional evidence and, on December 11, 2020, affirmed the Board's decision in full. *Id.* at 530a-31a; *see id.* at 540a-54a (Common Pleas' Pa. R.A.P. 1925(a) opinion). Lamar's appeal to our Court followed shortly thereafter.

3

## II. Discussion

Lamar presents several arguments for our consideration, which we summarize as follows.[3] First, the Board erred by enforcing the "unusual circumstances" special exception requirement from Sections 200-82C and 200-89. Lamar's Br. at 16-24. This phrase is unlawfully vague and ambiguous, with no specific criteria that would provide Lamar with an understanding of how to comply with its parameters, and should have been given no effect by the Board. *Id.* Second, the Board erred by declining to grant a special exception under either Section 200-82C or 200-89, as Lamar satisfied all of the enforceable special exception criteria and no one rebutted the consequent presumption that the sign would have a greater impact than normally expected for such signs on the community's health, safety, and welfare. *Id.* at 25-27. Third, assuming that the "unusual circumstances" criterion is enforceable, Lamar satisfied that criterion's requirements.[4] *Id.* at 28-30. Finally, the Board and its solicitor violated Lamar's due process rights by conducting the hearings in a biased manner. *Id.* at 30-34. Specifically, Lamar alleges that the Board and its solicitor

---

[3] "Our standard of review, where [a court of common pleas] takes no additional evidence, is limited to determining whether constitutional rights were violated, [whether] an error of law was committed[,] or whether necessary findings of fact were supported by substantial evidence of record." *SSEN, Inc. v. Borough Council of Borough of Eddystone*, 810 A.2d 200, 208 n.11 (Pa. Cmwlth. 2002). "By 'substantial evidence' we mean such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Valley View Civic Ass'n v. Zoning Bd. of Adjustment*, 462 A.2d 637, 640 (Pa. 1983) (citations omitted).

[4] Specifically, Lamar claims that an unusual circumstance exists because it owns an existing, nonconforming, off-premises sign on an adjacent property, which it would remove if it was granted a special exception to build its desired new sign on the property that is at issue in this case. Lamar argues that this situation is very similar to another one, which involved a different company, in which the Board determined that an unusual circumstance existed and granted that other company a special exception allowing it to build an off-premises sign. *See* Lamar's Br. at 28-30. We need not address the substance of this alternate argument, however, for the reasons discussed *infra*, as this appeal can be resolved on the more straightforward basis that the "unusual circumstances" requirement is inapplicable.

"acted in an improper prosecutorial fashion by cross-examining witnesses, offering personal testimony, and submitting their own evidence in an attempt to discredit or rebut the testimony of Lamar's expert witness, as well as allowing non-party [o]bjectors to provide testimony." *Id.* at 31.

> "Generally speaking, '[a] special exception is not an exception to a zoning ordinance, but rather a use which is expressly permitted, absent a showing of a detrimental effect on the community.'" *Tower Access Grp., LLC v. S. Union Twp. Zoning Hearing Bd.*, 192 A.3d 291, 300 (Pa. Cmwlth. 2018) (quoting *Manor Healthcare Corp. v. Lower Moreland Twp. Zoning Hearing Bd.*, . . . 590 A.2d 65, 70 ([Pa. Cmwlth.] 1991)). "The important characteristic of a special exception is that it is a conditionally permitted use, legislatively allowed if the standards are met." *Bray v. Zoning Bd. of Adjustment*, . . . 410 A.2d 909, 911 ([Pa. Cmwlth.] 1980). As this Court has explained, "[a]n applicant for a special exception has both the duty of presenting evidence and the burden of persuading the [zoning hearing board] that his proposed use satisfies the objective requirements of the zoning ordinance for the grant of a special exception." *Berner v. Montour Twp. Zoning Hearing Bd.*, 176 A.3d 1058, 1069 (Pa. Cmwlth.), [*rev'd on other grounds*, 217 A.3d 238 (Pa. 2019)] (citing *Manor Health[c]are*). "Once the applicant meets his burden of proof and persuasion, a presumption arises that [the proposed use] is consistent with the health, safety and general welfare of the community." *Id.* "The burden then normally shifts to the objectors to the application to present evidence and persuade the [zoning hearing board] that the proposed use will have a generally detrimental effect on health, safety, and welfare." *Id.* "The evidence presented by objectors must show, to a high degree of probability, that the use will generate adverse impacts not normally generated by this type of use and that these impacts will pose a substantial threat to the health and safety of the community." *Id.*

*Siya Real Est. LLC v. Allentown City Zoning Hearing Bd.*, 210 A.3d 1152, 1157 (Pa. Cmwlth. 2019).

With regard to Section 200-82C, we conclude that it is inapplicable to the instant matter and, thus, the Board properly declined to grant Lamar a special exception pursuant to that Zoning Ordinance provision. Section 200-14 of the Zoning Ordinance contains two relevant definitions, one for "sign" and another for "sign, off-premises." *See* Zoning Ordinance § 200-14. "Sign" is defined as follows:

> Any permanent or temporary structure or part thereof inclusive but not limited to flags, banners, or whirly gigs or any device attached, painted, or represented directly or indirectly on a structure or other surface that shall display or include any letter, word, insignia, flag, or representation used as or that is in the nature of an advertisement, announcement, visual communication, direction, or is designed to attract the eye or bring the subject to the attention of the public. Flags of any governmental unit or branch of any charitable or religious organization, interior sign not visible from a public right-of-way or adjoining property, and cornerstones built into or attached to a wall of a building shall not be construed to be "signs."

*Id.* By contrast, "[s]ign, off-premises" is defined as: "A sign advertising activities, services, products, or uses not located[,] made, sold, used, or served on the premises displaying such a sign." *Id.* Given that Lamar's desired outdoor sign is in no way affiliated with or connected to any business or organization on the Property, its sign is, by definition, off-premises in nature. Such off-premises signs are subject to additional restrictions that do not encumber regular signs. *See id.* § 200-85. Per its express language, Section 200-82C only applies to "signs which do not meet the restrictions of [Sections] 200-82A or B[,]" but *makes no mention* of excepting *off-premises* signs from the requirements imposed by Section 200-85. *See id.* § 200-82C. Therefore, Lamar's proposed outdoor sign could not be authorized as a special exception via Section 200-82C.

The same cannot be said, however, for Section 200-89, which addresses "signs which do not meet the restrictions set forth in this Article XII (Signs)[.]" *Id.* § 200-89. This reference to "Article XII" appears to be due to a scrivener's error, as Article XII applies to "Off-Street Parking and Loading," while Article XIII governs "Signs."[5] Given that Section 200-85 is part of Article XIII, Section 200-89 could theoretically enable Lamar to secure a special exception for its outdoor sign.

However, additional scrutiny of the Zoning Ordinance reveals that Section 200-89 cannot afford Lamar its desired relief either.

> Like statutes, the primary objective of interpreting ordinances is to determine the intent of the legislative body that enacted the ordinance. *See* 1 Pa. C.S. § 1921; *Bailey v. Zoning Bd. of Adjustment of City of Phila.*, . . . 801 A.2d 492 ([Pa.] 2002); *Malt Beverages Distribs. Ass'n v. Pa. Liquor Control Bd.*, 918 A.2d 171 (Pa. Cmwlth. 2007) . . . . In pursuing that end, we are mindful that a statute's plain language generally provides the best indication of legislative intent. *Id.* Thus, statutory construction begins with examination of the text itself. *Id.*
>
> In reading the plain language of a statute, "[w]ords and phrases shall be construed according to rules of grammar and according to their common and approved usage." 1 Pa. C.S. § 1903(a). Further, every statute shall be construed, if possible, to give effect to all its provisions so that no provision is "mere surplusage." 1 Pa. C.S. § 1921(a). Where the words in an ordinance are free from all ambiguity, the letter of the ordinance may not be disregarded under the pretext of pursuing its spirit. 1 Pa. C.S. § 1921.
>
> Thus, if we determine the ordinance provision at issue is unambiguous, we must apply it directly as written. *Bowman v. Sunoco, Inc.*, . . . 65 A.3d 901 ([Pa.] 2013); *see* 1 Pa. C.S. § 1921(b). However, if we deem the language of the ordinance ambiguous, we must then ascertain the legislative body's intent by statutory analysis, wherein we

---

[5] It is safe to say that the Zoning Ordinance is not exactly an exemplar of precise drafting.

> may consider numerous relevant factors. *Id.* An ambiguity exists when language is subject to two or more reasonable interpretations and not merely because two conflicting interpretations may be suggested. *Adams Outdoor Adver., L.P. v. Zoning Hearing Bd. of Smithfield Twp.*, 909 A.2d 469 (Pa. Cmwlth. 2006).

*Tri-Cnty. Landfill, Inc. v. Pine Twp. Zoning Hearing Bd.*, 83 A.3d 488, 509-10 (Pa. Cmwlth. 2014). In addition,

> [i]t is axiomatic that in determining legislative intent, all sections of [an ordinance] must be read together and in conjunction with each other, and construed with reference to the entire [ordinance]. . . . When the meaning of a word or phrase is clear when used in one section, it will be construed to mean the same thing in another section of the same [ordinance].
>
> A conflict between various [ordinances] or parts thereof is to be avoided and, if possible, the apparently conflicting provisions must be construed together with the more specific provisions prevailing over the general ones.

*Hous. Auth. of Cty. of Chester v. Pa. State Civ. Serv. Comm'n*, 730 A.2d 935, 945-46 (Pa. 1999). Here, Section 200-85 expressly states that "[e]xcept as provided for *in this section*, off-premises signs are prohibited." Zoning Ordinance § 200-85 (emphasis added). Construing this together with Section 200-89, which expressly refers to "signs," but makes no mention of "off-premises signs," we conclude that Section 200-89 does not allow for the approval of off-premises signs by special exception. As such, Section 200-89 was *also* inapplicable to this situation and, thus, the Board properly declined to grant Lamar a special exception pursuant to that portion of the Zoning Ordinance.

### III. Conclusion

In light of the foregoing analysis, we affirm Common Pleas' December 11, 2020 order, with regard to Common Pleas' affirmance of the Board's denial of Lamar's desired special exception.[6]

_____
ELLEN CEISLER, Judge

---

[6] Due to our resolution of this appeal, we decline to address the substantive merit of Lamar's due process argument.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: Appeal of the Lamar Companies :
From the Decision of the Zoning :
Hearing Board of East Whiteland : No. 1308 C.D. 2020
Township Dated October 29, 2019 :
:
Appeal of: The Lamar Companies :

## **O R D E R**

AND NOW, this 1st day of March, 2022, it is hereby ORDERED that the Court of Common Pleas of Chester County's December 11, 2020 order is AFFIRMED.

_____
ELLEN CEISLER, Judge